The PEOPLE of the State of Colorado, Complainant,

v.

Martin Joseph BERKLEY, Attorney–Respondent.

No. 93SA190.

Supreme Court of Colorado, En Banc.

Sept. 7, 1993.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

Pendleton & Sabian, P.C., Richard F. Hennessey, Denver, for attorney-respondent.

PER CURIAM.

This is an attorney discipline case. The respondent and the assistant disciplinary counsel entered into a stipulation, agreement, and conditional admission of misconduct. *See* C.R.C.P. 241.18. In the stipulation, the parties recommended the imposition of a public censure. A majority of an inquiry panel of the Supreme Court Grievance Committee approved the stipulation, including the recommendation of discipline. We accept the stipulation.

## I.

The respondent was admitted to the bar of this court on October 1, 1971, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). The parties stipulated to the following facts.

### Count I

Marlin and Jeanette Hall retained the respondent's law firm in January 1990, seeking bankruptcy protection for either their corporation, themselves personally, or both. At the first meeting, the Halls met with the respondent's paralegal to whom they delivered $800 in fees. In February 1990, the Halls again met with the respondent's paralegal and delivered another $800 in fees. In mid-March 1990, the Halls mailed an additional $1,500 to the respondent's law firm. Pursuant to the paralegal's direction, the Halls' accountant hand-delivered original 1989 tax returns to the paralegal at the respondent's office on April 10, 1990, for filing. Not having met with them, the respondent was not personally aware at that time that the Halls were clients of the firm, nor did he know that his paralegal had directed the Halls to deliver their original tax returns to the firm. The respondent did not realize that the tax documents had been delivered until October 1990.

After mid-April 1990, the Halls attempted to contact the paralegal without success. Their calls were not returned by the paralegal, by the respondent, or by any of the respondent's agents. In August 1990, Jeanette Hall learned that the paralegal was no longer working for the respondent. The respondent had fired the paralegal for misconduct and had made a related criminal complaint to the District Attorney against the paralegal alleging theft of law firm funds. The Halls attempted to contact the respondent but received no response.

On October 8, 1990, Jeanette Hall again tried to contact the respondent, threatening to go to the "Bar Association." When the respondent was informed that she was upset, he spoke with Jeanette Hall for the first time and learned that she was a client of the law firm. Because the paralegal had failed to follow law firm procedures for establishing central records of clients, the respondent did not discover until this telephone call that the Halls were clients.[1]

Jeanette Hall asked the respondent to return her original tax returns, and the respondent agreed to do so. However, the respondent did not notify the Halls in a timely manner when the tax returns were not found during an initial records search. In the stipulation, the respondent states that he told Jeanette Hall during the October 8 telephone call that he had insufficient information in his files to initiate a bankruptcy proceeding, and asked her to provide additional information. The respondent filed no bankruptcy proceeding. Between November 1990 and January 1991, Jeanette Hall and her son tried unsuccessfully to contact the respondent by telephone.

The respondent did write the Halls a letter in December 1990 which stated that their original tax returns were enclosed. When the respondent was notified that the tax returns were not in fact enclosed in the

---

1. In the stipulation, the respondent states that acceptance of original tax returns for filing has never been the law firm's practice and was, in fact, contrary to established policy. There was no apparent purpose in obtaining the original tax returns for filing, although information contained in the tax returns and schedules may have provided information for preparing bankruptcy schedules.

letter, he caused the returns and the client files to be supplied to the Halls' new lawyer in February 1991. On January 10, 1992, the respondent refunded to the Halls the $3,100 in fees that they had paid.

As the respondent has admitted, his neglect of the Halls' legal matters and failure to promptly return their income tax forms violated DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer) and DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive).

The assistant disciplinary counsel has stipulated with the respondent that the Halls experienced no actual monetary loss or damages from either the delay in analyzing their bankruptcy claim or from the retention of their original tax returns. Moreover, despite the absence of direct loss or damages, the parties state that "in March 1993, separate and apart from these disciplinary proceedings, respondent made full, fair and reasonable payment for any other losses, damages or inconvenience claimed by the Halls."

**Count II**

The respondent was retained by Larry Ruscetta in December 1987, to defend him against a motion for modification of child support filed the previous month. The matter was set for hearing for November 16, 1988. Ruscetta paid the respondent a $500 retainer.

Prior to the hearing date, the parties entered into a verbal stipulation which increased child support from $150 to $300 a month, commencing December 1, 1988, with $600 to be paid as a retroactive increase in support. On November 14, 1988, the opposing lawyer sent the respondent a written stipulation incorporating the terms of the verbal agreement. The respondent failed, however, to submit the document to his client and he took no further action on the case. In the stipulation submitted to this court, the respondent states that he had at that time ceased the active practice

of law and, although the document was apparently delivered to his new business address, he does not remember receiving it. Between November 1988 and April 10, 1991, no one attempted to contact the respondent even though Ruscetta did not pay the arrearage and increased child support, as agreed. On April 11, 1991, however, Ms. Ruscetta's new lawyer filed a verified motion to order stipulated agreement and a notice to set a hearing to enforce the written stipulation.

Although the respondent's law firm received a copy of the verified motion and notice to set the next day, the respondent never filed a responsive pleading and did not notify Ruscetta that the motion had been filed. The respondent states in the stipulation that, when the motion and notice was received, an employee of the firm placed it in a "miscellaneous" file and did not notify the respondent. The respondent did not find a copy of the motion until after he received the request for investigation in this proceeding.

The motion was subsequently granted by the court without hearing, and on May 21, 1991, a judgment for $5,100 in child support arrearage was entered. Ms. Ruscetta's lawyer pursued a wage assignment to satisfy the judgment.

The respondent admits that his conduct in failing to submit the settlement papers to his client and his failure to take any further action in the matter violated DR 6–101(A)(3) (neglect of a legal matter) and DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship).

**II.**

The assistant disciplinary counsel and the respondent have agreed that the respondent should receive a public censure for his misconduct, and a majority of the inquiry panel has approved this recommendation. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp.1992) (ABA *Standards*), in the absence of aggravating or

mitigating factors, suspension is generally appropriate when: "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." ABA *Standards* 4.42. On the other hand, public censure is warranted "when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." *Id.* at 4.43.

We note that the respondent has not previously been disciplined in over twenty years of practice. *Id.* at 9.32(a). Moreover, the respondent has cooperated with the grievance committee in these proceedings, *id.* at 9.32(e), and he has demonstrated remorse, *id.* at 9.32(*l*). In aggravation, there are multiple offenses, *id.* at 9.22(d), and the respondent has substantial experience in the practice of law, *id.* at 9.22(i).

We have previously found a public censure to be appropriate even where the misconduct has involved a pattern of neglect, or where the neglect has extended over a long period of time, when the lawyer has no prior history of discipline and the actual harm caused by the misconduct has been slight. *See People v. Podoll,* 855 P.2d 1389, 1392–93 (Colo.1993); *People v. Smith,* 847 P.2d 1154, 1155 (Colo.1993); *People v. Nelson,* 848 P.2d 351, 352–53 (Colo.1993). We therefore accept the stipulation, agreement, and conditional admission of misconduct. Some members of the court, however, would reject the stipulation.

### III.

Accordingly, it is hereby ordered that Martin Joseph Berkley be publicly censured. It is further ordered that Berkley pay the costs of this proceeding in the amount of $53.40, within thirty days after the announcement of this opinion, to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.